CLERKLEE vs. MUNDELL'S Lessee.

APPEAL from *Prince-George's* County Court. *Ejectment* for a tract of land called *Mundell's Survey*. This case was formerly before this court on an appeal by the present appellee, and the judgment of the court below was reversed, and the record remitted under a *procedendo*, directing a new trial. [See 3 *Harr. & Johns.* 462.] The defendant (now appellant,) took defence on the plots returned, for all the land included in the plaintiff's pretensions, and which is included in the deed from *Ninian Beall* to *James Ranton*, dated the 15th of July 1706, as located by the defendant.

1. At the new trial the plaintiff, (now appellee,) read in evidence a patent of the tract called *Mundell's Survey*, granted to the lessor of the plaintiff on the 21st of October

*The jury are to respect the instructions of the court on points of law in a civil action, and to find their verdict according to such instructions.*

*How far certain facts and circumstances were sufficient to lay a foundation to have justified the court in directing the jury to presume a grant of the land in dispute? Quere.*

VOL. IV. 63

---

Margin notes:

1819.

Clerklee
vs
Mundell

JUNE.

Where a case has been before the court of appeals upon a bill of exceptions, and a decision is made by that court on the law of the case, and a *procedendo* issued, and the court below gives judgment on the second trial in conformity to such decision of the court of appeals, if the same cause comes back to the court of appeals on an exception stating the same facts, whatever the court may think of their first opinion, the judgment must be affirmed.

1803; and also a patent for a tract called *Beall's Reserve*, granted in 1695, to *Mordecai Moore*, on a survey made for *Ninian Beall*, on the 25th of July 1684, and by him assigned to *Moore*. The survey is stated to have been made for *Beall* in pursuance of a warrant granted to him on the 15th of February 1683, for 1500 acres, and the land surveyed, and for which the grant issued, is described as "all that tract or parcel of land called *Beall's Reserve*, lying in *Calvert* county, on the west side of *Patuxent* river, and in the freshes of the said river, and on the east side of a branch called *Collington*, and on the west side of *Edward Isaac's* land, beginning at a bounded poplar of the land of the said *Isaac's*, thence," &c. containing 455 acres of land more or less. And he proved that these surveys were truly located by him on the plots. The defendant then read in evidence the following extracts from the land office of several warrants of survey having issued to *Ninian Beall*, viz. "1694, May 23d. Warrant for 3000 acres, dated the 18th of July 1689, granted *Ninian Beall* of *Calvert* county, this day renewed for the said quantity. 1694, December 20th. Warrant then granted to *Ninian Beall* for 1673 acres of land, due to him by renewment of that quantity out of a warrant for 3000 acres, granted him by renewment the 23d of May 1694. 1695, 7 bre. 21st. Warrant then granted to *Ninian Beall* for 400 acres of land, being due to him by renewal of part of a warrant for 1673 acres of land, granted him by renewment the 20th of December 1694." And to prove that *Beall's Reserve*, the land for which he took defence, was surveyed in virtue of the warrant granted to *Ninian Beall* for 1673 acres, and that the same had been patented to *Beall*, and that the jury might and ought to presume such patent to have issued, the defendant also offered in evidence the following entries from the *Rent Rolls* of *Prince George's* county, to wit. "400 acres. 16 yrly. val. *Beall's Reserve*, sur. 17 June 1695, for Col. *Nin. Beall*, beg. at a bounded oak of the land called *Forest*. Poss. Col. *Nin. Beall*. 400. 16. *Beall's Reserve*. Surveyed 17 of June 1695, for Col. *Ninian Beall*, beg. at a bound oak. Poss. 400. 16. *Richard Lee*, Esqr. 400. 16. *James Rantin* from *Ninian Beall*, 15 July, 1706." He also read in evidence a deed from *Ninian Beall* to *James Ranton*, dated the 15th of July 1706, with the endorsements thereon, conveying "all that tract or parcel of land called *Beall's Reserve*, being in *Prince George's* county on the west side of *Patuxent* river, in the woods and on the east side of the main branch of *Piscataway*, beginning at a bounded white oak being the S W bounded tree of a parcel of land surveyed for *Thomas Brooke*, called *The Forest*, thence," &c. containing 400 acres more or less; and a receipt dated 30th July 1706, for sixteen shillings sterling, being for alienation of the land. And that *Ranton* entered upon and became possessed and seized of the said tract of land as the law requires; and being so possessed and seized, that he did duly

sign, seal and deliver, to a certain *Richard Lee*, a deed, which was duly acknowledged and recorded amongst the land records of *Prince George's* county, dated the 3d of August 1737, "for all that tract or parcel of land called *Beall's Reserve*, lying, situate and being, in *Prince George's* county, and adjoining to a parcel of land belonging to *Thomas Brookes* called *Potomac Forest*, containing 400 acres of land more or less;" and endorsed on the deed was a receipt dated the 4th of November, for sixteen shillings sterling paid for an alienation fine on the said land. And to prove that *Richard Lee*, and his heirs and representatives, were regularly charged by the Lord Proprietary with the quit rents on the land, as patented land held by him and them, and that he and they paid quit rents to the Lord Proprietor as for patented lands, he read in evidence extracts from the debt books for *Prince George's* county, whereby it appears that *Richard Lee* was charged with the said land on the debt books from the year 1753 to the year 1772 inclusive. And to prove that *Richard Lee*, and those claiming under him, had been in the actual seisin, possession, use and occupation, of the said land, claiming the same as their right, the defendant next offered in evidence, by competent witnesses, who were from 60 to 65 years of age, and who were born within a mile of the land, and grew up in the neighbourhood, and were acquainted with the land from their first remembrance, that as far back as their recollection extended, that part of *Beall's Reserve* claimed by the defendant, was used and cultivated by *Lee*, and his descendants, or by the tenants of *Lee*, and his descendants; and that no person, except *Lee* and his descendants, or his or their tenants, had to the knowledge or belief of the said witnesses possessed any part of the said tract of land, claiming the same as *Beall's Reserve*; but that a part of the land located by the defendant as *Beall's Reserve*, which was comprehended within the lines of the survey called *The Plains of Shrewsbury Resurveyed*, as located on the plots, had been in the possession and occupation of the owners of the last mentioned tract ever since that survey was made, or from about that time. It was further given in evidence, that *Lee*, at the time when the deed from *Ranton* was executed to him, and until his death, resided about 30 or 40 miles distant from the land; and that he being so seized and possessed of the land, died about the year 1790, intestate, leaving *Russell Lee* his heir at law, a minor, who entered upon and became seized and possessed of the land as the law directs; and being so seized and possessed, died before he arrived to 21 years of age, and without issue, leaving *Sarah Russell Contee*, *Ann Lee*, *Eleanor Dawson*, and *Margaret Clerklee*, the wife of *James Clerklee*, the defendant, his heirs at law; and that *Sarah Russell Contee*, *Ann Lee*, *Eleanor Dawson*, and *Margaret Clerklee*, after the death of *Russell Lee*, and before the institution of this suit, entered upon the said tract of land, and became seized and possessed

1819.

Clerklee
vs
Mundell

1819.

Clerklee
vs
Mundell

thereof as the law requires. And to prove that *Richard Lee*, and those claiming under him, had been charged with and paid assessment for the land, the defendant offered in evidence the assessment lists of *Prince-George's* county, in which were the following entries, to wit:

| | | value |
|---|---|---|
| "1781.  *Lee, Richard.*  Part of *Beall's Pasture*, 400 ac. | | £400 |
| 1782.  *Lee, Richard,* Esq.  Part of *Beall's Pasture*, 400 a. | | 400 |
| 1783.  *Lee, Richard,* Esq.  Part of *Beall's Plains,* by Resurvey, &c. 400 a. | | 250 |
| 1786.  *Lee, Richard.*  Part of *Beall's Pleasure*, 400 a. | | |
| 1793.  *Lee, Richard's* Heirs.  *Beall's Reserve*, 400 a. | | |
| 1798.  *Lee, Richard's* Heirs.  *Beall's Reserve*, 400 a. | | |
| 1804.  *Lee, Richard's* Heirs.  *Beall's Reserve*, 400 a. " | | |

And to prove that the land stated in the assessment lists, and the land mentioned in the said deed from *Beall* to *Ranton*, and referred to and mentioned in the rent rolls and debt books, was the same, the defendant offered in evidence that *Beall's Reserve*, as located by him, was situated in the hundred of *Prince-George's* county called *Grubb Hundred*, from the assessment of lands in which hundred the said entries were taken, and that *Richard Lee*, and his heirs or representatives, had no land within that hundred, or in that county, called *Beall's Pasture*, or *Beall's Pleasure*, unless the tract called *Beall's Reserve* might have acquired that name by reputation. He also gave in evidence, that *Richard Lee*, and those claiming under him, had paid the quit rents and taxes on the whole of the tract called *Beall's Reserve*, and that the same, nor any part thereof, had not been assessed or charged to any other person, and that the whole tract was generally understood, and reputed by the neighbours to belong to the said *Richard Lee*, and his heirs, and to be called *Beall's Reserve.* He further offered in evidence certificates of adjoining surveys, to wit, *Potomak Landing.* surveyed for Col. *Henry Darnall* on the 5th of April 1685, containing 250 acres. *The Forest*, surveyed for *Thomas Brooke* on the 5th of September 1694, containing 547 acres. *Shrewsbury Plains*, surveyed for *Clement Hill* on the 2d of October 1719, containing 153 acres. *The Widow's Trouble*, resurveyed for *James Brooke* on the 15th of January 1732-33, containing 1848 acres. *Blacklock Venture*, resurveyed for *Thomas Blacklock* on the 15th of December 1755, containing 155 acres. *The Plains of Shrewsbury*, resurveyed for *Edward Clarkson* and wife, on the 25th of January 1772, containing 551¼ acres. And that those tracts of land, as also the tract called *Beall's Reserve*, claimed by the defendant, were by him truly located on the plots;

1819.

Clerklee
vs
Mundell

and which plots, with the surveyor's illustration and explanation thereof, the defendant also gave in evidence. He also gave in evidence, that the record books in the land office had been searched and examined, and that no patent for *Beall's Reserve*, the tract for which he took defence, could be found, nor any certificate thereof recorded in that office, or was any to be found among the papers thereof. He also gave in evidence the deposition of *John Callahan*, now deceased, and who was formerly register of the land office, who deposed, that "previous to the year 1700, the register of the land office did not record, as it appeared by the old record books in his office, the payment made by the party of the composition money for lands surveyed for such party, or make any marginal note in the record of the certificate of such payment, whether the certificate was made upon a warrant of resurvey, or whether the certificate, when returned, included more land than was expressed upon the warrant or warrants upon which the same was made. That in the year 1679, and before and after as far down as the year 1700, there are many certificates for lands, surveyed for different persons, recorded in the land office, upon which it cannot be found that there is or are any patent or patents recorded in said office. That it is and always has been customary to recite in the patent or grant when issued, the consideration upon which the same issued, and the manner in which the composition money for the land mentioned in such grant was paid. That since the revolution several old patents, granted between the year 1678 and 1700, and one as far back as the year 1682, which were in the hands of those holding under the patentee therein named, and which had never before been recorded in the land office, have been produced to him to be recorded, and have been recorded. That it has sometimes happened to himself, since he has been in office, that the person for whom a patent was made out, took it to the governor to procure his signature, and having obtained it, never returned the *patent* to him to be recorded; whereby it happened that a patent in such case did regularly issue, and yet there was and is no record of it in his office. That for near 30 years last past he has from time to time frequently heard a report that one of the old record books in the Proprietary land office, containing the record of patents, has been lost. That the record books in the land office refer from one to the other, and that he never found a reference to any record book which is not to be found in the office, and that he from thence is of opinion no record book has been lost out of said office, burnt or destroyed." He also offered evidence, that *Beall's Reserve*, patented to *Mordecai Moore*, which was offered in evidence by the plaintiff, is a different tract of land from the tract claimed by the defendant, situate in a different part of the county, and owned and possessed by different persons. He also offered in evidence that there were two persons named *Ninian Beall* living in *Prince-George's* county, one the father, and the

other the son; and that *Ninian Beall* the son, died in 1710, and *Ninian Beall* the father, in 1717; and that beside the tract for which the defendant took defence, surveys were made, and certificates returned, to the Proprietary land office, in the name of *Ninian Beall*, between the years 1680 and 1707, for 19,730 acres of land, situate in *Prince-George's* and *Calvert* counties, for which the caution money was paid; among which tracts were two, each called *The Inclosure*, the one for 1503 acres, surveyed for *Ninian Beall* on the 1st of March 1686-7, and the other for 237 acres, surveyed for *Ninian Beall* the 8th of December 1698. He further offered evidence, that *Beall's Reserve*, claimed by him, was the first survey made in the name of *Ninian Beall*, after the warrant for 1673 acres was granted him; and that there was at least a sufficient number of acres of that warrant, unappropriated to other surveys, to satisfy and pay the caution money on the survey of *Beall's Reserve*, the tract claimed by the defendant in this cause. He also read in evidence a number of original certificates, returned by the deputy surveyors of different counties, some on the *eastern* and some on the *western shore*, and some original warrants which had been issued from the Proprietor's land office, which original papers were found during the trial of the cause in the house of Doctor *William Hill*, near *Upper Marlborough*, among the papers which had been in the possession and care of his grandfather *Clement Hill*, formerly surveyor-general of the *western shore*, one of which original papers was dated in the year 1680, another in 1698, a third in 1704-5, and a fourth in 1707—the others principally in the years 1713, '14 and '15. He further gave in evidence by Doctor *Hill*, that the *British* troops took possession of his house last summer twelve months, when all the books and papers there fell into their possession, and were scattered about the house and the yard; and that after the said troops had left the county, the papers remaining were collected together; but that it appeared a great proportion was missing, being either destroyed or carried off by the enemy. He further offered in evidence, that the *field books* of the different deputy surveyors who had surveyed lands granted in *Prince-George's* county from the year 1684 to the year 1700, were formerly at the house of Doctor *Hill*, having been left there among the books and papers of *Clement Hill*; and that two of said field books are now in his possession, but not those which contain surveys made in 1695. But that the father of Doctor *Hill*, lent one of them formerly to the late *Stephen West*, which could not now be found, and that he, Doctor *Hill*, lent another of them some years past to *Arthur Shaaff*, esquire. He further offered in evidence, that *Ninian Beall* was in the year 1680 a deputy surveyor of *Calvert* county; and also offered in evidence the *Land-Holder's Assistant*, to prove to the jury that it was not the practice in the land office, at the time when the said survey which the defendant claims was made, to record the certificates, until patents were granted thereon. The plaintiff then prayed the

opinion of the court, and its instruction to the jury, that the evidence in this case is insufficient to justify the jury in presuming that a grant issued to *Ninian Beall* for *Beall's Reserve*. This instruction the Court, [*Key*, A. J.] gave. The defendant excepted.

1819.

Clerklee
vs
Mundell

2. The defendant then prayed the court to instruct the jury, that the entries on the rent rolls, stating that *Beall's Reserve* was surveyed for *Ninian Beall* on the 17th June, 1695, and that the possession of the said land was in *Ninian Beall*, could not possibly be accounted for by reason of the deed from *Ninian Beall* to *James Ranton*, nor deducible from that source; and therefore, that if the jury believed that the entry in the rent rolls, and the charges in the debt books were made by or under the direction of the Lord Proprietor's officers, entrusted by him with making out grants for his lands, and with collecting his revenue; and if they believed *Ninian Beall* was on the 17th of June 1695 in possession of the warrant for 1673 acres of land, which at that time was not, nor had been appropriated for payment for any other lands, and that so much of that warrant as was sufficient to satisfy the caution or composition money to the Proprietary for the lands included in the tract, for which the defendant took defence, had never been appropriated to any other survey or in payment for any other lands; and that *Ninian Beall*, and those claiming under him, had been in the undisturbed possession and enjoyment of said land, from the year 1695 until the plaintiff surveyed the same; and if they further believed that the said tract, and the other tracts located by the defendant, were truly located by him on the plots, that then they might find that *Ninian Beall* had an equitable interest in the land derived from the Lord Proprietor, either by a located warrant, and payment of the caution or composition money, or by a certificate of survey on a common or other warrant, and a payment of the composition, and a length of possession consequent on such equitable interest in *Beall*, and those claiming under him; and if from the whole of those facts and circumstances, the jury should be satisfied and believe, that a patent was issued for the lands to *Ninian Beall*, they might find a verdict for the defendant. This opinion the Court [*Key*, A. J.] declined to give. The defendant excepted, &c.

3. The plaintiff then prayed the court to direct the jury, that they ought to respect the instructions of this court, and the opinion of the court of appeals on which the same was founded, and that they ought to find their verdict as directed by the courts' instructions; and had no lawful right to disregard the same, and to find a verdict contrary thereto, the court being, according to our laws and constitution, the proper tribunal to decide questions of law. Which opinion the Court, [*Key*, A. J.] gave, and directed the jury accordingly. The defendant excepted. Verdict and judg-

ment for the plaintiff, and the defendant appealed to this court.

The cause was argued before CHASE, Ch. J. and EARLE, MARTIN, and DORSEY, J.

*Martin*, (Attorney General,) for the Appellant, contended, that although the evidence on the former trial, in the opinion of this court, was not sufficient to found the presumption that a grant had issued to *Ninian Beall* for the land in question, yet that the additional evidence offered at the last trial was sufficient for that purpose; and the court below erred in not directing the jury, that if they believed the evidence, they ought to presume such a grant to have issued to *Ninian Beall* for the tract of land called *Beall's Reserve*. He referred to *Kilty's Land Hold. Ass.* 64, 65, 66, 108 to 112, 161, 162, (and *note*,) 163, 256, 257. To show under what circumstances deeds and grants of private persons, and grants of the King or of the Proprietary might be presumed, he cited *Keymer vs. Summers, Bull. N. P.* 74. *Stocks vs. Booth*, 1 *T. R.* 431. *(note a.) Griffith vs. Matthews*, 5 *T. R.* 296. *Campbell vs. Wilson*, 3 *East*, 294. *Bealy vs. Shaw.* 6 *East*, 215. *Eldridge vs. Knott, Cowp* 214. *Denn vs. Barnard, Ibid* 597. *Jones vs. Turberville*, 2 *Ves. jr.* 13, 14. *Blewitt vs. Thomas, Ib.* 669. *Hillary vs. Waller*, 12 *Ves.* 250 to 266. *Earle vs. Baxler*, 2 *W. Blk. Rep.* 1228. *Gittings's Lessee vs. Hall*, 1 *Harr. & Johns.* 14. *Bradford's Lessee vs. McComas, et al.* 3 *Harr. & Johns.* 444. *Bergen vs. Bennett*, 1 *Caine's Cas.* 18. *Van Dyck vs. Van Bueren*, 1 *Johns. Rep.* 90. *The King vs. The Inhabitants of Long Bushby*, 7 *East*, 45. *Gray vs. Gardiner*, 3 *Mass. Rep.* 399. *Fassett's Lessee vs. Dale*, 3 *Harr. & Johns.* 119. *Brown vs. Frost*, 2 *Bay's Rep.* 126. 2 *Bac. Ab.* tit. *Evidence*, (H) 660. *Crimes vs. Smith*, 12 *Coke*, 4 *Beadle vs. Beard, Cro.* 5. *The Mayor of Kingston Upon Hull vs. Horner*, 1 *Cowp.* 106. *Halcroft vs. Heele*, 1 *Bos. & Pull.* 400. *Roe vs. Ireland*, 11 *East*, 283. *Parker's Lessee vs. Baldwin, Ib.* 488 to 490. *Lloyd vs. Gordon*, 2 *Harr. & McHen.* 254. *Greenhawk, et ux. Lessee, vs. Cumberford, (a). Carroll, et*

*(a)* This case, the attorney general stated, was an action of ejectment in the General Court for the *eastern shore* at April term 1792, before *S. Chase*, Ch. J. and *Goldsborough* and *J. T. Chase*, J. That at the trial the plaintiff offered in evidence a certificate for a tract of land called *Rigby*, the land in dispute, surveyed in 1679 for *John Woolers*; that *Woolers* in 1694, conveyed it to *J. Bradbury*; and that *Bradbury* in 1735 conveyed to *T. Hutchins*. He proved that *Hutchins* was in possession of the land, and died in the actual possession, leaving two sons, *Thomas* his heir, and *Alexander*; that *Thomas* enlisted in the army in the war of 1756, and never returned, but left an only daughter, who while a minor married *Greenhawk*, one of the lessors of the plaintiff. *A. Hutchins*, after his brother enlisted obtained a grant of the land in 1762. The defendant claimed under the grant to *A. Hutchins*. Upon applica-

*al. Lessee vs. Norwood,* 4 *Harr. & M·Hen.* 287. S. C.
5 *Harr. & Johns.* 155. *Hall's Lessee vs. Gough,* 1 *Harr.
& Johns.* 119 *Allston's Lessee vs. Saunders,* 1 *Bay's
Rep.* 36. *Lucas vs. Owens, Ib. Index,* tit. *Nullum Tem-
pus.* Read vs. Brookman, 3 *T. R.* 158, per *Buller, J.*
and *Archer vs. Sadler,* 2 *Hen. & Munf.* 370.

Clerklee
vs
Mundell

*Magruder,* for the Appellee, insisted that the evidence
offered at the last trial did not change the case so as to
make the grounds and principles of the decision of this
court on the former appeal, inapplicable. To show that
the recital in the deed from *Ranton* to *Lee* was not evi-
dence in this case, he referred to *Peake's Evid.* 73, and 1
*Phill. Evid.* 305. Upon the doctrine of presumption,
and of an elder certificate of survey over-reaching and
defeating an elder grant obtained on a junior certificate, he
referred to *Hammond's Lessee vs. Norris,* 2 *Harr & Johns.*
130, and *Cockey's Lessee vs. Smith,* 3 *Harr. & Johns.* 20.

MARTIN, J. delivered the opinion of the court. In the
case of *Hambleton vs. Tenant, (ante* 440,) this court de-
cided, that where a case had been before them upon a bill
of exceptions, and a decision made by this court on the
law arising upon it, and a writ of *procedendo* issued, and
the court below gave judgment on the second trial in con-
formity to the decision of this court, if the same cause
came back to this court on a bill of exceptions similar to
the first, the judgment should be affirmed; for the court
below were bound by the decision of this court, and could
not err in giving judgment in conformity to it. Upon the
same principle, the court think the judgment in this case
ought to be affirmed; for although some new testimony was
offered in the second trial, it did not vary the case, or take
it out of the rules of law upon which this court had decid-
ded it.

It is unnecessary to state what would be the opinion of
this court upon this case, if it was now before them upon
its merits.

JUDGMENT AFFIRMED.

tion to the court they directed the jury, that as Mrs. *Greenhawk*
was the daughter of *T. Hutchings,* the son, and heir at law of *T.
Hutchings,* the father, who died in possession of the land, and as
she was entitled to the land, and to a grant, the jury might pre-
sume, notwithstanding the grant to her uncle *A. Hutchings,* that a
grant had been antecedently issued to her, as in right it ought to
have been. The jury accordingly did presume such grant, and
found a verdict for the plaintiff. See 3 *Harr. & M·Hen.* 589.

*G, Scott,* for the Plaintiff.
*Martin,* (Attorney General) for the Defendant.